**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Houweling Intellectual Properties Incorporated,<br><br>    Plaintiff,<br><br>v.<br><br>Mountain High Greenhouse Construction LLC, et al.,<br><br>    Defendants. | No. CV-22-08122-PCT-DWL<br><br>**ORDER** |

Pending before the Court is a motion for default judgment filed by Plaintiff Houweling Intellectual Properties Inc. ("Plaintiff") against the two remaining defendants in this patent infringement action, Mountain High Construction, LLC ("Mountain High") and ALPS, Inc. ("ALPS"). (Doc. 52.) For the following reasons, the motion is denied but Plaintiff is granted leave to amend should it wish to amend its operative complaint in an attempt to cure the deficiencies identified in this order.

**RELEVANT BACKGROUND**

On November 10, 2022, Plaintiff filed its operative pleading, the Second Amended Complaint ("SAC"). (Doc. 21.) As alleged in the SAC, Plaintiff's president, Casey Houweling, "invented a unique and novel greenhouse with a climate control system adjacent to the growing section of the greenhouse, which is protected by U.S. Pat. No. 8,707,617" ("the '617 Patent"). (*Id.* ¶ 10.) Plaintiff "is the owner by assignment of all rights, title, and interest in the '617 Patent, and possesses the exclusive right of recovery,

including the exclusive right to recover for past infringement." (*Id.* ¶ 13.) Additionally, Plaintiff's "unique and novel greenhouse climate control system is also protected by U.S. Pat. No. 11,412,668" ("the '668 Patent"), "which is a continuation of the application that issued as the '617 patent." (*Id.* ¶ 15.) Plaintiff "licenses the '617 Patent, '668 Patent and other related patents to greenhouse builders that market and build greenhouses incorporating the patented technology disclosed in the '617 patent." (*Id.* ¶ 19.)

The defendants at issue here, Mountain High and ALPS, are two of the four defendants named in the SAC. The other two defendants are Copperstate Farms, LLC ("Copperstate"), which has since settled with Plaintiff (Docs. 50, 51), and T.C. v.d. Dool B.V. ("T.C. v.d. Dool"), which has never been served and is thus dismissed under Rule 4(m). (*See also* Doc. 7 at 2 ["This order serves as an express warning that the Court will dismiss this action, without further notice to Plaintiff(s), with respect to any Defendant that is not timely served."].)

The SAC alleges that Copperstate "owns and operates a greenhouse" located in Snowflake, Arizona (the "Snowflake Greenhouse") and that "[o]n information and belief, each of Defendants Mountain High, ALPS and [T.C.] v.d. Dool either offered to construct, agreed to construct, designed, or constructed the Snowflake Greenhouse." (Doc. 21 ¶¶ 21-22.) The SAC also contains extensive allegations concerning why the Snowflake Greenhouse infringes the '617 Patent and the '668 Patent. (*Id.* ¶¶ 25-29.)[1] However, there are no other specific references to Mountain High and ALPS in the SAC, which instead broadly attributes various acts of misconduct to "Defendants." (*See, e.g., id.* ¶ 44 ["On

---

[1] For example, the SAC alleges that "[i]n infringement of Claim 1 of the '617 Patent, the Snowflake Greenhouse comprises: (1) a growing section; (2) a climate control system comprising a substantially enclosed end gable adjacent to and outside the growing section; (3) the end gable comprising one or more vents and one or more louvers selectively moveable to cooperate with the one or more vents to control air flow through the one or more vents; (4) wherein the climate control system is arranged to control the environment within the growing section by flowing ambient air from outside the greenhouse into the climate control system and into the growing section, re-circulating air from the growing section back into the climate control system and into the growing section, and a combination thereof; (5) the ambient air, re-circulating air, or combination thereof, flowing through the climate control section and into the growing section to control the climate within the growing section." (Doc. 21 ¶ 26.)

information and belief, before their first acts of infringement, Defendants knew of Houweling's '617 Patent, knew their infringing greenhouse product was substantially similar to the inventions disclosed in the '617 patent in such manner as would infringe on the '617 Patent, and knew Copperstate's use of that design was unauthorized. Defendants nevertheless deliberately and willfully carried out the acts of infringement described herein."].) Some of the paragraphs in the SAC even characterize "Defendants" as a singular entity, rather than as a collection of entities. (*See, e.g., id.* ¶ 30 ["Defendants had actual notice of the '617 Patent at least as early as March or April of 2022, when it received a March 31, 2022 letter from counsel for Houweling . . . ."], ¶ 31 ["Defendants have taken the actions described herein despite its knowledge of the '617 Patent."].) The SAC concludes by asserting a pair of patent infringement claims against all defendants under 35 U.S.C. § 271. (*Id.* ¶¶ 39-56.)

On December 27, 2022, Plaintiff filed proof of service of the summons and SAC as to ALPS. (Doc. 33.)

On February 13, 2023, representatives from all of the parties (*i.e.*, Plaintiff, Copperstate, Mountain High, ALPS, and T.C. v.d. Dool) "met at the accused greenhouse" in "an effort to amicably resolve this dispute." (Doc. 52-1 ¶ 6.) In a declaration filed as an attachment to the default judgment motion, Plaintiff's president, Casey Houweling, avows that "[d]uring the meeting the Defendants Mountain High, ALPS and T.C. [v.d.] Dool, agreed collectively to make improvements to the accused greenhouse at their expense, and to pay Plaintiff the standard royalty for greenhouses covered by the asserted patents. These non-Copperstate Defendants agreed to have the proposal ready and circulated within 2-3 weeks." (*Id.* ¶ 7.) However, "[t]he non-Copperstate Defendants did not respond for over two months." (*Id.* ¶ 8.)

On April 10, 2023, Plaintiff applied for an entry of default against ALPS. (Doc. 40.) The next day, the clerk entered a default against ALPS. (Doc. 41.)

"[I]n mid-April of 2023," Casey Houweling "sent an email to [Mountain High] regarding the status of the proposal. On April 14, 2023, [Mountain High] responded that

the improvements to the accused greenhouse were proposed to the management of Copperstate but that there was no mandate at the time to invest in an upgrade to the greenhouse." (Doc. 52-1 ¶ 8.)

On June 1, 2023, Plaintiff filed proof of service of the summons and SAC (which occurred on May 3, 2023) as to Mountain High. (Doc. 46.) That same day, Plaintiff applied for an entry of default against Mountain High. (Doc. 47.) The next day, the clerk entered a default against Mountain High. (Doc. 48.)

On June 29, 2023, after reaching a settlement with Copperstate (Doc. 52 at 3), Plaintiff filed a motion to dismiss its claims against Copperstate with prejudice. (Doc. 50.) That motion was granted. (Doc. 51.)

On December 22, 2023, Plaintiff filed the pending motion for default judgment against Mountain High and ALPS. (Doc. 52.) Neither defendant responded.

On April 5, 2024, the Court issued a tentative ruling. (Doc. 54.)

On April 17, 2024, the Court held oral argument, during which Plaintiff did not challenge the tentative ruling's analysis.

**DISCUSSION**

I.   <u>Legal Standard</u>

The "decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The following factors, known as the *Eitel* factors, may be considered when deciding whether default judgment is appropriate: (1) the possibility of prejudice to the plaintiff, (2) the merits of the claims, (3) the sufficiency of the complaint, (4) the amount of money at stake, (5) the possibility of factual disputes, (6) whether the default was due to excusable neglect, and (7) the policy favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

"[T]he general rule" for default judgment purposes "is that well-pled allegations in the complaint regarding liability are deemed true." *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). "The district court is not required to make detailed findings of fact." *Id.* "However, necessary facts not contained in the pleadings, and claims which

are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

II.    The First, Fifth, Sixth, And Seventh *Eitel* Factors

"In cases like this one, in which Defendants have not participated in the litigation at all, the first, fifth, sixth, and seventh [*Eitel*] factors are easily addressed." *Zekelman Indus. Inc. v. Marker*, 2020 WL 1495210, *3 (D. Ariz. 2020).

The first factor weighs in favor of default judgment. If Plaintiff's motion were denied, Plaintiff would be without other recourse for recovery against Mountain High and ALPS. *PepsiCo, Inc. v. Cal. Sec. Cans.*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

The fifth and sixth factors also weigh in favor of default judgment. Due to Mountain High's and ALPS's failure to respond to the SAC, there is no dispute over material facts and no indication that default is due to excusable neglect. To the contrary, Plaintiff has proffered evidence that it engaged in settlement negotiations with Mountain High and ALPS after this case was filed, only for those defendants to seemingly renege on a settlement proposal. (Doc. 52-1 ¶¶ 7-8.)

The seventh factor generally weighs against default judgment, given that cases "should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, the existence of Rule 55(b), which authorizes default judgments, "indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177.

III.    The Fourth *Eitel* Factor—The Amount Of Money At Stake

Under the fourth factor, the Court considers the amount of money at stake in relation to the seriousness of the defendant's conduct.

On the one hand, the amount of money Plaintiff seeks is substantial—Plaintiff seeks a total of $575,400, which constitutes a royalty payment of $191,800 (*i.e.*, a royalty rate of $2.74 per square meter multiplied by size of the Snowflake Greenhouse, approximately 70,000 square meters) that is then trebled to account for the allegedly willful nature of the challenge conduct. (Doc. 52 at 13-16.) On the other hand, this amount of money is commensurate with the seriousness of the challenged conduct. When "the sum of money

involved is considerable, but it is commensurate with the seriousness of the claims," the fourth *Eitel* factor "will not preclude default judgment." *Farmer v. Thar Process, Inc.*, 2023 WL 8448498, *7 (D. Or. 2023).

### IV. The Second And Third *Eitel* Factors—Merits And Sufficiency

That leaves the second and third *Eitel* factors—the merits of the claim and the sufficiency of the complaint. "These two factors are often analyzed together and require courts to consider whether a plaintiff has stated a claim on which it may recover." *Vietnam Reform Party v. Viet Tan - Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (internal quotation marks omitted). "Of all the *Eitel* factors, courts often consider the second and third factors to be the most important." *Id*.

The second and third *Eitel* factors weigh against granting default judgment. Although the SAC adequately alleges why Copperstate should be held liable for the alleged acts of patent infringement, the allegations concerning Mountain High and ALPS are conclusory and inadequate. As noted in the background section of this order, the only paragraph in the SAC that makes any attempt to describe those entities' role in the challenged conduct is paragraph 22, which provides: "On information and belief, each of Defendants Mountain High, ALPS and [T.C.] v.d. Dool either offered to construct, agreed to construct, designed, or constructed the Snowflake Greenhouse." (Doc. 21 ¶ 22.) There are no other specific references to Mountain High and ALPS in the SAC, which instead broadly attributes various acts of misconduct to "Defendants." (*See, e.g., id.* ¶¶ 31, 44.)

This pleading approach is improper. Time and again, courts (including this Court) have concluded that a complaint cannot "lump[] all of the defendants together as a collective whole—'Defendants'—without specifically alleging the role that each defendant played in causing Plaintiff's alleged injury." *Petramala v. Arizona*, 2019 WL 1777330, *3 (D. Ariz. 2019). *See also Dickenson v. Haga*, 2019 WL 416720, *3 (C.D. Cal. 2019) ("Plaintiff merely sets forth allegations as to actions taken by 'Defendants' as a collective group. Absent specific allegations identifying what actions each defendant took against Plaintiff and how such actions violated Plaintiff's rights, the Complaint fails to provide

Defendants with fair notice of Plaintiff's claims or the grounds upon which they rest. As such, Plaintiff's claims against each individual defendant are subject to dismissal.") (citation omitted); *Harris v. Wells Fargo Bank, N.A.*, 2011 WL 6294249, *2 (E.D. Cal. 2011) ("Plaintiffs['] allegations fail to satisfy the liberal pleading standards as set forth in [*Twombly*] and [*Iqbal*]. Throughout the Complaint, Plaintiffs' allegations are confusing and conclusory, directed generally at multiple Defendants without differentiating between the actions of one defendant and another."); *Corazon v. Aurora Loan Services, LLC*, 2011 WL 1740099, *4 (N.D. Cal. 2011) ("Here, Plaintiff simply refers to 'Defendants' in nearly all of her allegations. . . . By failing to differentiate among defendants or specify which defendant is the subject of Plaintiff's various allegations, Plaintiff's Complaint violates Rule 8(a)(2) because it fails to provide [Defendant] with fair notice of its alleged misconduct.").

Additionally, even assuming it was permissible for the SAC to lump together Mountain High, ALPS, and T.C. v.d. Dool without differentiation, the factual allegations in paragraph 22—which, again, are the only factual allegations specifically directed toward Mountain High and ALPS—fail to plausibly suggest that either defendant is liable for patent infringement.[2] Based on the disjunctive language of paragraph 22, Mountain High and/or ALPS may have simply offered or agreed to construct the Snowflake Greenhouse, without designing it or ultimately performing any construction services. Nor does the SAC allege that Mountain High and/or ALPS intended, at the time of this construction offer or agreement, to construct the Snowflake Greenhouse in a manner that would infringe Plaintiff's patents. If Mountain High and ALPS simply offered or agreed to construct a greenhouse, without specifying construction components that would infringe Plaintiff's patents, it is difficult to see how Mountain High and ALPS could be held liable under any of three liability theories (direct infringement, induced infringement, contributory

---

[2] The problem, to be clear, is not that the allegations in paragraph 22 were made on information and belief. Such allegations can provide the foundation for a default judgment. *Fong v. United States*, 300 F.2d 400, 409 (9th Cir. 1962). The problem is that the allegations are conclusory and devoid of specifics.

- 7 -

infringement) identified in Plaintiff's motion. (Doc. 52 at 4-7.)

As for the first theory, direct infringement occurs when a defendant "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor." 35 U.S.C. 271(a). *See also In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1334 (Fed. Cir. 2012) (direct infringement requires, among other things, a showing that the defendant "has been infringing the patent by making, selling, and using the device embodying the patent") (cleaned up). As a preliminary matter, it is unclear whether offering to construct something that would infringe a patent is the equivalent of offering "to sell" a patented invention. But even assuming it is, the allegation in paragraph 22 is broad enough to encompass an offer or agreement to build a greenhouse in general, or in any manner, and is not limited to offers or agreements that include within their terms construction plans that would infringe Plaintiff's patents. Thus, the SAC fails to plausibly allege that Mountain High and ALPS directly infringed Plaintiff's patents.[3]

As for Plaintiff's second theory, induced infringement is, simply stated, "actively induc[ing] infringement of a patent." 35 U.S.C. § 271(b). To establish a claim for induced infringement, the SAC must include allegations establishing "(1) an act by the defendant knowingly intended to induce another to infringe, and (2) actual infringement by the third party induced thereby." *Cybiotronics, Ltd. v. Golden Source Elecs. Ltd.*, 130 F. Supp. 2d 1152, 1164-65 (C.D. Cal. 2001). The SAC fails in this regard for at least two reasons. First, assuming the "actual" (or "direct") infringement was Copperstate's operation[4] of the Snowflake Greenhouse (Doc. 21 ¶ 21)—as discussed, the SAC fails to adequately allege direct infringement as to any other defendant—the SAC includes no allegation of any "act" done by any other defendant to "induce" Copperstate into operating the greenhouse. The SAC alleges that "Defendants, either alone or with others, have induced and continue

---

[3] Plaintiff asserts that "[s]ervice of a complaint alleging patent infringement is sufficient to show that a cause of action has been pled." (Doc. 52 at 4.) This is confusing and circular.

[4] *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 484 (1964) ("[U]authorized use, without more, constitutes infringement.").

inducing infringement of one or more valid claims of the '617 Patent and the '668 Patent, by, among other things, actively and knowingly aiding and abetting others to directly make or use in the United States, without license, permission, or authority, at least one greenhouse that is covered by the claims of the '617 Patent and the '668 Patent, in violation of 35 U.S.C. § 271(b)." (Doc. 21 ¶ 33.) This is conclusory.

Second, "induced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement." *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011). But there are no non-conclusory factual allegations in the SAC concerning Mountain High's and ALPS's knowledge that the design of the Snowflake Greenhouse infringed Plaintiff's patents, let alone factual allegations that plausibly suggest those defendants harbored a specific intent to encourage Copperstate's (or anyone else's) infringement. The SAC's references to "knowledge" are conclusory and do not plausibly allege any such knowledge. (Doc. 21 ¶¶ 31, 32, 35, 44.) Specifically, the SAC alleges that "[d]espite Houweling providing clear notice to Copperstate regarding the '617 Patent, and on information belief, Copperstate and the other Defendants have continued to and will continue to infringe the '617 Patent and the '668 Patent unless enjoined by this Court." (*Id.* ¶ 34.) But as to the "other Defendants," who are alleged to have "either offered to construct, agreed to construct, designed, or constructed the Snowflake Greenhouse" (*id.* ¶ 22),[5] it is unclear how notice provided "as early as March or April of 2022" (*id.* ¶ 30) could be imputed to any of these acts, as the Snowflake Greenhouse was presumably already designed and constructed before Plaintiff sent its March 31, 2022 letter complaining about Copperstate's "use" of the greenhouse. (*Id.* ¶ 30.)

Plaintiff's third theory is "contributory infringement" in violation of 35 U.S.C. § 271(c), which provides:

> Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement

---

[5] The SAC does not allege when any of these alleged acts took place.

> of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

*Id.* Typically, contributory infringement suits are brought against "a supplier of replacement parts specially designed for use in the repair of infringing articles." *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 486 (1964). "The doctrine was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932 (2005).[6] "A party is liable for contributory infringement under 35 U.S.C. § 271(c) if: 1) there is direct infringement, 2) the accused infringer had knowledge of the patent, 3) the component has no substantial noninfringing uses, and 4) the component is a material part of the invention." *Koninklijke Philips N.V. v. Zoll Med. Corp.*, 656 F. App'x 504, 522 (Fed. Cir. 2016) (cleaned up). "[Section] 271(c) [requires] a showing that the alleged contributory infringer knew that the combination for which his component was especially designed was both patented and infringing." *Aro*, 377 U.S. at 488. Here, there are no allegations in the SAC involving any "component" at issue. Contributory infringement appears inapplicable. Furthermore, as noted, the SAC lacks any non-conclusory allegations regarding Mountain High's and ALPS's knowledge of the patents at issue.[7]

In an apparent attempt to address these pleading deficiencies, Plaintiff attaches a declaration to its default judgment motion in which Casey Houweling avows that "it is . . .

---

[6] "[D]istribution of a component of a patented device will not violate the patent if it is suitable for use in other ways." *Id.*

[7] For similar reasons, Plaintiff's attempt to establish by default that Mountain High and ALPS engaged in *willful* infringement—and thus should be subject to treble damages—is unavailing. Although the SAC contains conclusory, boilerplate allegations on the topic of willfulness (Doc. 21 ¶ 35 ["Defendants infringement of the '617 Patent is, has been, and continues to be willful and deliberate."]; *id.* ¶ 44 ["Defendants knew of Houweling's '617 Patent, knew their infringing greenhouse product was substantially similar to the inventions disclosed in the '617 patent in such manner as would infringe on the '617 Patent, and knew Copperstate's use of that design was unauthorized . . . [yet] deliberately and willfully carried out the acts of infringement described herein."]), the problem once again is that there are no well-pleaded *facts* to support those assertions, at least as they apply to Mountain Home and ALPS.

my understanding that the remaining Defendants were hired by Copperstate to design and construct features of the accused greenhouse that caused the accused greenhouse to infringe the asserted patents" and that "Defendants (other than [Copperstate]) admitted [during an April 2023 settlement discussion] that they were aware of the asserted patents and do not dispute that the accused greenhouse infringes the asserted patents." (Doc. 52-1 ¶¶ 4, 5.) One difficulty with these factual assertions is that they are not set forth in the SAC, which is the only document that matters for purposes of establishing liability by default. *Cripps*, 980 F.2d at 1267 ("In reviewing a default judgment, this court must take the well-pleaded factual allegations . . . as true. However, necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."). *See also Alan Neuman Productions v. Albright*, 862 F.2d 1388, 1392-93 (9th Cir. 1988) ("[A]cts which are not established by the pleadings of the prevailing party, or claims which are not well-pleaded, are not binding and cannot support the [default] judgment.") (citation omitted); *Gunawan v. Sake Sushi Restaurant*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) ("[W]ith respect to liability, a defendant's default does no more than concede the complaint's factual allegations; it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, *without more*, establish the defendant's liability on each asserted cause of action.") (emphasis added).[8]

Additionally, it appears that Mountain High's and ALPS's statements during an April 2023 settlement negotiation provide the foundation for Houweling's "understanding" of the matters addressed in his declaration. But the general rule is that "a statement made during compromise negotiations about the claim" is "not admissible . . . either to prove or disprove the validity or amount of a disputed claim." Fed. R. Evid. 408(a)(2). Plaintiff does not attempt to reconcile its reliance on the Houweling declaration with Rule 408.

---

[8] Alternatively, even if the Court possessed discretion to allow Plaintiff to attempt to establish liability through the submission of evidentiary materials beyond the scope of the SAC, *see Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 n.5 (5th Cir. 1975) ("We do not consider here the possibility that otherwise fatal defects in the pleadings might be corrected by proof taken by the court at a hearing."), the Court would decline to do so here. The more efficient approach is to grant leave to Plaintiff to amend the SAC in an attempt to cure the deficiencies identified in this order.

- 11 -

Finally, another difficulty with assertions attributed to Mountain High and ALPS is that they are ambiguous. It is not clear from those assertions whether the awareness of the patents acknowledged by Mountain High and ALPS was awareness at the time they designed and constructed allegedly infringing features of the Snowflake Greenhouse or merely awareness at the time of the February 2023 meeting at the greenhouse.

V.  Balancing The Factors

Having considered all of the *Eitel* factors, the Court concludes that default judgment should be denied.[9]

VI.  Next Steps

Although the SAC is insufficient to establish liability by default against Mountain High and ALPS, Plaintiff may be able to cure the deficiencies identified in this order with relative ease—all that is needed is more factual detail about the specific roles Mountain High and ALPS played in the underlying acts of infringement. Accordingly, the Court declines to dismiss Mountain High and ALPS without leave to amend. Instead, Plaintiff is authorized to file a Third Amended Complaint. *See, e.g., Holland v. Lanksherman Plaza, LLC*, 2021 WL 2808694, *3 (C.D. Cal. 2021) (denying motion for default judgment but authorizing amendment "[i]f Holland chooses to rectify the deficiencies identified herein").

…

---

[9]  Although it is unnecessary to turn to the question of damages in light of Plaintiff's failure to establish liability, the Court notes that although it has no concern with the sufficiency of Plaintiff's proffered evidence concerning why $191,800 would be a reasonable estimate of the royalty associated with the Snowflake Greenhouse, Plaintiff's motion papers fail to acknowledge the necessity of an offset for the proceeds that Plaintiff presumably received from its settlement with Copperstate. *See, e.g., Government Employees Ins. Co. v. Lurie*, 2019 WL 276201, *1 (E.D.N.Y. 2019) (adopting the magistrate judge's recommendation that, "as Plaintiffs have settled this action with all Defendants other than Lurie, . . . the Court [should] offset Plaintiffs' [default judgment] damages by an amount equal to its settlement with those co-Defendants with which Lurie is jointly and severally liable"); *Transwest Capital, Inc. v. Cashless Concepts, Inc.*, 2013 WL 4460240, *4 (E.D. Cal. 2013) ("Plaintiff concedes that any default judgment should be offset by the amounts Plaintiff recovered through settlement from the other defendants in this action."). *See generally Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 111 (6th Cir. 1995) ("[E]ven if Atlas is bound on the issue of liability, it still has the opportunity to respond to the issue of damages. Such a response includes possible offsets to which Atlas may be entitled by reason of plaintiffs' recoveries against, and settlements with, other parties.").

Accordingly,

**IT IS ORDERED** that:

1. Plaintiff's motion for default judgment against Mountain High and ALPS (Doc. 52) is **denied**.

2. Defendant T.C. v.d. Dool is **dismissed** pursuant to Rule 4(m) for failure to effect service.

3. The Second Amended Complaint ("SAC") (Doc. 21) is **dismissed** with leave to amend as to Mountain High and ALPS.

4. Plaintiff may, within 21 days of the issuance of this order, file and serve a Third Amended Complaint ("TAC").  The TAC may include only changes from the SAC that are intended to remedy the deficiencies identified in this order.  If Plaintiff chooses to file a TAC, it must also file, as an exhibit, a redlined version that indicates how the TAC differs from the SAC.

5. If Plaintiff does not file a TAC within 21 days of the issuance of this order, the Clerk shall enter judgment accordingly and terminate this action.

Dated this 18th day of April, 2024.

Dominic W. Lanza
United States District Judge