**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Houweling Intellectual Properties Incorporated,<br><br>        Plaintiff,<br><br>v.<br><br>Copperstate Farms LLC, et al.,<br><br>        Defendants. | No. CV-22-08122-PCT-DWL<br><br>**ORDER** |

Pending before the Court is Plaintiff's motion for attorneys' fees and interest. (Doc. 76.) For the reasons that follow, Plaintiff's motion is granted in part and denied in part.

**BACKGROUND**

On July 11, 2022, Plaintiff initiated this patent infringement action, naming a single Defendant, Copperstate Farms, LLC ("Copperstate"). (Doc. 1.)

On October 7, 2022, Plaintiff served Copperstate. (Doc. 9.)

On October 17, 2022, Plaintiff filed a First Amended Complaint ("FAC") as a matter of course, adding Defendants Mountain High Greenhouse Construction, LLC ("Mountain High"), APLS, Inc. ("APLS"), and T.C. v.d. Dool B.V. ("T.C. v.d. Dool"). (Doc. 12.)

On November 10, 2022, Plaintiff filed a Second Amended Complaint ("SAC") (Doc. 21) pursuant to LRCiv 15.1(b). (Doc. 22.)

On November 11, 2022, Plaintiff's previous counsel, Ferguson Case Orr Paterson LLP and its attorneys, Corey A. Donaldson and Jessica M. Wan, filed an application to withdraw and substitute new counsel, Jaye G. Heybl of Stradling Yocca Carlson & Rauth

("Counsel"). (Doc. 24.)

On November 14, 2022, the substitution of counsel was granted. (Doc. 26.)[1]

On December 20, 2022, Plaintiff applied for entry of default against Mountain High. (Doc. 30.)

On December 27, 2022, the Clerk issued a minute order: "There being no proof of service filed on the Court's docket as to [Mountain High], the Clerk's Office will take no action on the Plaintiff's application for entry of default." (Doc. 31.)

Later that day, Plaintiff filed proof of service on Mountain High on November 14, 2022 (Doc. 32) and on ALPS on December 12, 2022 (Doc. 33).

On January 9, 2023, Plaintiff filed a renewed application for entry of default against Mountain High. (Doc. 34.)

On January 10, 2023, the Clerk entered default against Mountain High. (Doc. 35.)

On February 27, 2023, Plaintiff filed a stipulation indicating that the parties were negotiating a global resolution of the matter and requesting an extension of the deadline for Copperstate to respond to the SAC. (Doc. 37.) The extension request was granted. (Doc. 38.)

On April 4, 2023, Plaintiff filed a "request for hearing to enter final judgement" against Mountain High. (Doc. 39.)

On April 14, 2023, the Court denied the "request for hearing" as procedurally improper and substantively inadequate and ordered Plaintiff to file a motion for default judgment against Mountain High. (Doc. 42.)

On May 5, 2023, Plaintiff filed a motion for relief from the Court's April 14, 2023 order. (Doc. 43.) Plaintiff had filed the SAC on November 10, 2022, but four days later, Plaintiff inadvertently served Mountain High with the FAC, not the then-operative SAC. (*Id.*) Plaintiff requested that the entry of default be set aside. (*Id.*)

---

[1] It appears that Counsel began working on this case on October 3, 2022 (Doc. 77-1 at 2), over a month before the substitution of counsel was requested and granted, such that Counsel worked on the FAC and the SAC.

On May 8, 2023,[2] the Court granted Plaintiff's motion and vacated the January 10, 2023 entry of default as to Mountain High. (Doc. 44.)

On June 1, 2023, Plaintiff applied for entry of default against Mountain High for the third time. (Doc. 47.) The Clerk re-entered default. (Doc. 48.)

On June 30, 2023, the Court dismissed Copperstate pursuant to the parties' stipulation. (Doc. 51.)

On December 22, 2023, Plaintiff filed a motion for default judgment against Mountain High. (Doc. 52.)

On April 5, 2024, the Court set oral argument on Plaintiff's motion for default judgment and issued a tentative order denying the motion. (Docs. 54, 55.)

On April 17, 2024, Counsel attended oral argument via video conferencing and advised the Court that Plaintiff agreed with the Court's tentative order. (Doc. 56.)

On April 18, 2024, the Court issued a final version of the order (substantively identical to the tentative order) denying the default judgment motion. (Doc. 57.) That order also dismissed T.C. v.d. Dool for failure to serve. (*Id.* at 13.)

On May 9, 2024, Plaintiff filed its now-operative pleading, the Third Amended Complaint ("TAC"). (Doc. 58.)

On May 16, 2024, Plaintiff served the TAC on Mountain High. (Doc. 62.)

On July 12, 2024, Plaintiff filed its fourth application for entry of default as to Mountain High (Doc. 63), which the Clerk entered (Doc. 64).

On November 27, 2024, Plaintiff filed a renewed motion for default judgment as to Mountain High. (Doc. 68.)

On December 16, 2024, the Court granted in significant part the renewed motion for default judgment. (Doc. 70.) Judgment was entered in favor of Plaintiff and against Mountain High in the amount of $383,601 and Mountain High was permanently enjoined from any future making, using, offering for sale, or selling greenhouses covered by U.S. Pat. Nos. 8,707,617 and 11,412,668 in the territories of the United States of America until

---

[2] The order was docketed the following day.

the expiration of those patents. (*Id.*)

On January 13, 2025, Plaintiff filed the pending motion for attorneys' fees and pre- and post-judgment interest (Doc. 76) and supporting materials (Docs. 77, 77-1).[3]

On January 15, 2025, Plaintiff filed a notice of voluntary dismissal of ALPS. (Doc. 78.)

## DISCUSSION

I. <u>Attorneys' Fees</u>

A. **Legal Standard**

In patent cases,[4] "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. This provision enables courts "to address unfairness or bad faith in the conduct of the losing party, or some other equitable consideration of similar force, which made a case so unusual as to warrant fee-shifting." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 549 (2014) (cleaned up). The text of the statute "is patently clear. It imposes one and only one constraint on district courts' discretion to award attorney's fees in patent litigation: The power is reserved for 'exceptional' cases." *Id.* at 553. "Exceptional" means "uncommon," "rare," or "not ordinary." *Id.* "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* at 554. The statutory text is "inherently flexible" and should not be forced into "an inflexible framework." *Id.* at 555.

"[A] district court analyzing a request for fees under the Patent Act should look to the 'totality of the circumstances' to determine if the infringement was exceptional." *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1180 (9th Cir. 2016). Courts should eschew any "precise rule or formula for making these determinations" and should

---

[3] On January 29, 2025, Plaintiff filed a notice of errata amending one paragraph of its motion for attorneys' fees. (Doc. 79.)

[4] The same standard applies in trademark cases. The fee-shifting provisions in the Patent Act and the Lanham Act are "parallel and identical" and are interpreted "in tandem." *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1180 (9th Cir. 2016).

- 4 -

instead "examine the totality of the circumstances to determine if the case was exceptional, exercising equitable discretion" by considering a nonexclusive list of factors, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence," using "a preponderance of the evidence standard." *Id.* at 1180-81.[5]

B. **Analysis**

Plaintiff contends that because the Court previously found Mountain High's infringement to be willful, and Mountain High has failed to participate in this action, those two considerations compel a determination that this is an "exceptional" case and an exercise of discretion in favor of awarding attorneys' fees. (Doc. 76 at 3.) Plaintiff cites *Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co.*, 2021 WL 5707741, *8 (N.D. Cal. 2021), for the proposition that courts "commonly find that willful infringement, in conjunction with nonparticipation in litigation, makes a case 'exceptional.'" So they do. But courts do not always find that the combination of alleged willfulness and default judgment makes a case exceptional. *Deckers Outdoor Corp. v. Pinkcoboutique LLC*, 2024 WL 4557308, *4 (C.D. Cal. 2024) ("[T]he Court struggles to conclude the case is exceptional. Merely alleging willfulness is not sufficient to demonstrate an exceptional case."); *Tempur Sealy Int'l, Inc. v. Seltyk Mattress Inc.*, 2023 WL 3075881, *6 (C.D. Cal. 2023) ("[O]ther than Seltyk's failure to appear and defend, litigation in this case has been straightforward and run-of-the-mill, with substantive filings limited to the initial Complaint and the instant Motion. Accordingly, Tempur Sealy fails to establish that this case is exceptional and an award of attorneys' fees is therefore not appropriate.") (cleaned up). Rather than accepting what is "commonly" done, courts are expected to consider "the totality of the circumstances" on a "case-by-case" basis and exercise their discretion accordingly. *Octane Fitness*, 572 U.S. at 554.

---

[5]  Following *Octane Fitness*, the Ninth Circuit expressly "overrule[d] [its] precedent to the contrary." *SunEarth*, 839 F.3d at 1181.

- 5 -

Although the Court previously determined that the allegations in the TAC, taken as true, just barely established that it was plausible that Mountain High willfully infringed the patents at issue, it doesn't follow that the Court must deem this an exceptional case warranting attorneys' fees. The allegations supporting the Court's plausibility finding were thin (even though the Court's order denying default judgment based on the SAC emphasized that more factual detail was needed to establish both liability and willfulness), such that the Court considered the willfulness determination to be a close question.

The order denying the original default judgment motion outlined the deficiencies related to establishing liability, further noted that "there are no non-conclusory factual allegations in the SAC concerning Mountain High's and ALPS's knowledge that the design of the Snowflake Greenhouse infringed Plaintiff's patents," and explained that "[t]he SAC's references to 'knowledge' are conclusory and do not plausibly allege any such knowledge." (Doc. 57 at 9.) "Although the SAC contains conclusory, boilerplate allegations on the topic of willfulness, the problem once again is that there are no well-pleaded *facts* to support those assertions, at least as they apply to Mountain Home and ALPS." (*Id.* at 10 n.7, cleaned up.)

The TAC added only one factual allegation pertaining to willfulness: "Defendants Mountain High and ALPS also had knowledge of the '617 Patent through its [sic] previous involvement in construction of greenhouses covered by the '617 Patent, and Defendants Mountain High and ALPS would were [sic] made aware of the existence and coverage of the '617 Patent through these construction activities." (Docs. 58 & 59 ¶ 32.) The "had knowledge" and "made aware" portions of this allegation are conclusory, such that the only alleged fact to support the contention that Mountain High had knowledge of the '617 Patent (and therefore infringed it willfully) is that Mountain High had "previous involvement in construction of greenhouses covered by the '617 Patent."

The order granting the renewed default judgment motion stated that "it is not obvious why such involvement necessarily equates to awareness that the conduct at issue in this case constituted infringement of the '617 Patent." (Doc. 70 at 3.) Indeed, if Plaintiff

filed other suits or sent cease-and-desist letters during the construction of these other greenhouses—the most obvious way Mountain High would have been made aware of any infringement of the '617 Patent—presumably Plaintiff would have alleged such facts in the TAC. Nevertheless, the Court concluded that because "plausibility is all that is required here," it was at least plausible, albeit "not inevitable," that Mountain High derived awareness that the previous greenhouses it constructed infringed the '617 Patent. (*Id.*)[6]

Under § 284 of the Patent Act, enhanced damages do not have to "follow a finding of egregious misconduct"—rather, courts are vested with "discretion" to "take into account the particular circumstances" of the case. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 106 (2016). When doing so here, the Court determined that treble damages were appropriate. (Doc. 70 at 3.)

The decision whether to award attorneys' fees under § 285 likewise involves an exercise of discretion, again taking the circumstances of the case into account, but it doesn't follow that these two determinations must always point in the same direction. No doubt, they often will. But under the circumstances of this case, where the willfulness finding was a close call and the need to advance considerations of compensation and deterrence has been fully satisfied by the treble damages already awarded, the Court concludes that this is not an exceptional case warranting an award of attorneys' fees. Rather, this is a run-of-the-mill, straightforward case. Like many other cases that result in default judgment, the substantive filings were limited to complaints and default judgment motions.

Furthermore, even if the Court were to conclude that this was an exceptional case and attorneys' fees were merited, the fees requested here are not reasonable. As noted above, in a case like this one, where no Defendants participated at all, all Plaintiff needed to do was file a sufficient complaint, serve it, apply for default, and file a motion for default

---

[6] *See, e.g.*, *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978) ("sufficiency of the complaint" in the context of default judgments means "sufficient to state a claim"); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (to state a claim, a complaint must contain sufficient factual matter, accepted as true, to meet a "plausibility standard" that requires "more than a sheer possibility that a defendant has acted unlawfully" but does not rise to the level of a "probability requirement").

judgment.  These steps should not consume great quantities of time, particularly in a case like this one, where the issues were not complicated and essentially only one cause of action was asserted—the two claims in the TAC were both the same cause of action, as applied to the two patents at issue.  Nevertheless, Plaintiff requests $127,335.00 in attorneys' fees.  (Doc. 76 at 2.)  Fee awards in cases like this one are typically far more modest.  *See, e.g.*, *Westgate MFG, Inc. v. Norco Wholesale Elec. Supply Inc.*, 2022 WL 3101766, *7 (C.D. Cal. 2022) (awarding $22,057 in attorneys' fees in Patent Act/Lanham Act case with seven claims for relief); *Hinton v. Completely Innocent LLC*, 2022 WL 1265924, *5 (D. Ariz. 2022) (awarding $11,896.50 in fees in Lanham Act case resolved on default judgment).

Here, the time recorded is excessive for the quantity and quality of the work performed.  For example, on December 19, 2022, Counsel block-billed 1.2 hours (72 minutes) for working on the application for entry of default as to Mountain High and "prepar[ing] instructions to local counsel re same."  (Doc. 77-1 at 3.)  This entry followed two other entries (1.10 and 0.40, for a total of 90 minutes) spent doing "analysis" in preparation for preparing the application for entry of default.  (*Id.*)  The application for entry of default consisted of two pages of boilerplate.  (Doc. 30.)  The most important part of the application was the assertion that the FAC had been served, yet Counsel failed to notice that the FAC was no longer the operative complaint, an oversight suggesting haste, not meticulous care.  It is difficult to comprehend how 2.7 hours of attorney time could have been spent on this extremely short, boilerplate, faulty application for default.

Between April 24, 2024 and May 9, 2024, Counsel recorded 10.4 hours of time spent on working on the TAC.  (Doc. 77-1 at 5.)  The redlined version demonstrating the alterations from the SAC to the TAC (Doc. 59) shows how limited the changes were—just a few added allegations, the removal of T.C. v.d. Dool, and a few other small edits.  Even recognizing that some thought and discussion preceded the actual revisions, the amount of time spent is excessive in relation to the work produced.

Finally, between April 27, 2023 and December 22, 2023, Counsel recorded *over 70 hours* researching and drafting the original (denied) motion for default judgment.  (Doc.

77-1 at 4-5.)[7] That is excessive, particularly given the outcome.[8]

II.     Pre- And Post-Judgment Interest

Plaintiff also seeks pre- and post-judgment interest. Each request is addressed below.

   A.     **Prejudgment Interest**

"[A] postjudgment motion for discretionary prejudgment interest constitutes a motion to alter or amend the judgment under Rule 59(e)." *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 175 (1989). "Under Rule 59(e), a motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999). Here, Plaintiff made a cursory request for prejudgment interest in its renewed motion for default judgment (Doc. 68 at 20-21), which the Court overlooked in the order granting the motion. The Court apologizes for that oversight and will thus consider the request on the merits.

Under 35 U.S.C. § 284, a prevailing patent claimant is entitled to "damages adequate to compensate for the infringement . . . together with interest and costs as fixed by the court." This provision vests district courts with discretion to award prejudgment interest, which is not reserved for "exceptional" cases and "should ordinarily be awarded absent some justification for withholding such an award" because it is "necessary to ensure that the patent owner is placed in as good a position as he would have been in had the infringer entered into a reasonable royalty agreement." *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 654-55 (1983). "[I]t may be appropriate to limit prejudgment interest, or perhaps even

---

[7] Again, block-billing made this figure somewhat difficult to compute, but it seems clear that the bulk of this work was devoted to the default judgment motion.

[8] Although the Court finds that the fee request is unreasonably large, this determination did not factor into the separate analysis of whether fees should be awarded in the first place. If the Court had determined a fee was warranted, the amount awarded could have been reduced from the amount requested. The Court includes these observations only to note that although its exercise of discretion not to award attorneys' fees may be disappointing to Plaintiff, nothing close to the amount of fees requested was ever on the table.

1 deny it altogether, where the patent owner has been responsible for undue delay in
2 prosecuting the lawsuit" or where other circumstances favor limiting or denying
3 prejudgment interest. *Id.* at 657. "But prejudgment interest is not awarded as a penalty; it
4 is merely an element of just compensation." *City of Milwaukee v. Cement Div., Nat.*
5 *Gypsum Co.*, 515 U.S. 189, 197 (1995).

6       Unfortunately, neither the allegations in the TAC nor the supplementary materials
7 submitted by Plaintiff adequately establish the point at which prejudgment interest should
8 be deemed to begin accruing. Plaintiff's argument on that issue is as follows: "The
9 infringing greenhouse was first offered for sale by Mountain High on November 22, 2019,
10 and the court entered judgment against Mountain High on December 16, 20[2]4, which
11 results in just over 5 years for interest to accrue." (Doc. 76 at 11, citations omitted.) In an
12 effort to substantiate a "first offered for sale" date in November 2019, Plaintiff cross-
13 references Counsel's declaration, which contains the following avowal: "Attached hereto
14 as Exhibit C is a true and correct copy of an initial 'Materials and Labor' quote dated
15 November 14, 2019, from [Mountain High] to [Copperstate], for [Mountain High] to
16 construct the accused infringing greenhouse. This quote was provided by counsel for
17 Copperstate on September 12, 2022. This quote represents the earliest Mountain High
18 offer to sell the infringing greenhouse to Copperstate, that [Plaintiff] is aware of. This
19 quote was then accepted by Copperstate and Mountain High proceeded with constructing
20 the infringing greenhouse." (Doc. 77 ¶ 21.)

21       Plaintiff's proffered materials are insufficient to establish a November 2019 starting
22 date for the accrual of prejudgment interest. Plaintiff's theory hinges on the notion that
23 Mountain High's November 2019 offer to Copperstate constituted an "offer to sell" within
24 the meaning of 35 U.S.C. § 271(a), which provides that "whoever without authority makes,
25 uses, offers to sell, or sells any patented invention, within the United States or imports into
26 the United States any patented invention during the term of the patent therefor, infringes
27 the patent." But as noted in the order denying Mountain High's first motion for default
28 judgment, "it is unclear whether offering to construct something that would infringe a

patent is the equivalent of offering 'to sell' a patented invention." (Doc. 57 at 8.) Mountain High has done nothing in its subsequent filings to shed any light on that issue. Furthermore, the Court's independent research suggests that a construction firm's offer to build a structure utilizing a particular design that is patented—such as Mountain High's offer here—would not qualify as an "offer to sell" within the meaning of § 271(a). *Transocean Offshore Deepwater Drilling, Inc. v. Stena Drilling Ltd.*, 659 F. Supp. 2d 790, 797-99 (S.D. Tex. 2009) (emphasizing that "[t]he crucial element [of a 'sale' or 'offer for sale'] . . . is that the transaction contemplates delivery and possession of a completed invention" and that the "emphasis on transfer of possession of a product from buyer to seller is consistent with courts' determinations of what types of commercial transactions rise to the level of a 'sale' for purposes of patent infringement"). The Court's order granting default judgment was supported by allegations that, taken as true, established that Mountain High, without authority, *made* Plaintiff's patented invention, as prohibited by § 271(a), during construction of the greenhouse—not that Mountain High sold or offered to sell the patented invention. Thus, the date on which prejudgment interest should begin accruing is the date on which Mountain High first began making Plaintiff's invention in the process of constructing the accused greenhouse.

Unfortunately, Plaintiff's allegations and supplementary materials are insufficient to establish that date. The TAC alleges that that Copperstate did not accept Mountain High's November 2019 construction proposal—instead, Mountain High subsequently "issued a follow-up proposal" in May 2020, Copperstate "accepted" that follow-up proposal on an unspecified later date, and Mountain High "constructed" the accused greenhouse on yet another unspecified later date. (Doc. 58 ¶¶ 18-21.) The date on which Mountain High's "ma[d]e" the infringed patent during the construction process would presumably qualify as a permissible date of infringement (and, thus, a permissible accrual date for prejudgment interest), but the materials provided by Mountain High provide no basis for determining that date.[9]

---

[9] The November 2019 proposal designated that the "period"—presumably the period in which construction was expected to take place—was "February/March 2020." (Doc.

Given Plaintiff's failure to provide sufficient information to substantiate and calculate its request for prejudgment interest, that request is denied.[10]

B. **Post-Judgment Interest**

Under 28 U.S.C. § 1961(a), "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." Thus, the Court agrees with Plaintiff that an award of post-judgment interest is mandatory here. *Planned Parenthood of Columbia/Willamette Inc. v. American Coalition of Life Activities*, 518 F.3d 1013, 1017 (9th Cir. 2008) ("Section 1961 provides for the mandatory award of post-judgment interest on any money judgment in a civil case recovered in a district court.") (cleaned up).

The Court disagrees, however, with Plaintiff's assertion that the applicable interest rate for that award is 8.5%, which Plaintiff calculates by cross-referencing "Arizona's statutory rate as codified at A.R.S. § 44-1201(B)," which is "simple interest calculated using the prime rate plus one percent." (Doc. 76 at 12.) In fact, post-judgment "interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a). Here, judgment was entered on December 16, 2024. (Doc. 73.) The weekly average 1-year constant maturity Treasury yield during the preceding calendar week (*i.e.,* the week of December 9-13, 2024) was 4.218%.[11] Thus, the monthly post-

---

77-1 at 34.) But that proposal was not accepted, and clearly the construction did not take place until sometime after the May 2020 follow-up proposal.

[10] If the request had been granted, prejudgment interest would have been calculated using the un-trebled amount, *Beatrice Foods Co. v. New England Printing & Lithographing Co.*, 923 F.2d 1576, 1580 (Fed. Cir. 1991) ("Prejudgment interest can only be applied to the primary or actual damage portion and not to the punitive or enhanced portion of a damage award.") (cleaned up), potentially using a rate of post-judgment interest different than the one proposed by Plaintiff. *Juno Therapeutics, Inc. v. Kite Pharma, Inc.*, 2020 WL 2844410, *4-6 (C.D. Cal. 2020) (awarding "the rate most consistent with the evidence and arguments presented in this case").

[11] Historical interest rate information is located on the Federal Reserve's website. The data download program available on that website indicates that the daily "Market yield on U.S. Treasury securities at 1-year constant maturity, quoted on investment basis" was 4.2% on December 9, 2024; was 4.22% on December 10, 2024; was 4.21% on December 11, 2024; was 4.22% on December 12, 2024; and was 4.24% on December 13, 2024. The average of those figures is 4.218%.

- 12 -

judgment interest on the $383,601 judgment is $1,348.36 (and not the $2,717 figure requested by Plaintiff).

Accordingly,

**IT IS ORDERED** that Plaintiff's motion (Doc. 76) is **granted in part and denied in part**. Plaintiff is not awarded attorneys' fees or prejudgment interest against Mountain High. However, Plaintiff is awarded monthly post-judgment interest of $1,348.36.

**IT IS FURTHER ORDERED** that an amended judgment shall issue to include the post-judgment interest.

**IT IS FURTHER ORDERED** that because this order addresses all remaining issues between Plaintiff and Mountain High, and all other Defendants have now been dismissed (Docs. 51, 57, 78), the Clerk shall close this case.

Dated this 18th day of February, 2025.

Dominic W. Lanza
United States District Judge